# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1485

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Lester Michael Weasel Bear, Jr., | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: November 18, 2003

Filed: February 2, 2004 (Corrected 3/10/04)

_____

Before MURPHY, LAY, and FAGG, Circuit Judges.

_____

MURPHY, Circuit Judge.

Defendant Lester Michael Weasel Bear, Jr. pled guilty to robbery and second degree murder in Indian Country, in violation of 18 U.S.C. §§ 1153, 1111(a), and 2111, but reserved his right to appeal any sentence in excess of 30 years. The United States Sentencing Guidelines applied at sentencing, and they provide that where a murder as defined in 18 U.S.C. § 1111 takes place in the course of a federal robbery, the guideline for first degree murder should be used. U.S.S.G. § 2B3.1(c)(1). The district court applied that guideline and made some uncontested adjustments, arriving

at a final offense level of 42 and a sentencing range of 360 months to life. The court sentenced Weasel Bear to 55 years on each count, to be served concurrently. On appeal, Weasel Bear challenges the use of the cross reference to first degree murder and the 55 year sentence on the robbery count for which the statutory maximum is 15 years. We affirm in part and reverse in part.

Late in the evening of December 31, 2001 Lester Michael Weasel Bear (Weasel Bear), who was then 19, and his 14 year old brother walked to the home of 82 year old Richard Tall on the Pine Ridge Indian Reservation. They intended to steal Tall's Lincoln Town Car and had a baseball bat and tools with them. After unsuccessfully attempting to hotwire the car, they broke into Tall's house to get his car keys. Tall was asleep so Weasel Bear jostled his foot to wake him, and Tall grabbed a stick to defend himself. Weasel Bear pushed Tall back onto his bed and struck his head and body repeatedly with the bat. Tall held up his hands defensively before falling to the floor, saying "I quit." Although Weasel Bear found and took the car keys, the brothers were not able to start any of Tall's cars so they left.

Weasel Bear returned to Tall's home the next morning to try again to take a car. This time Weasel Bear's 17 year old brother went along, and the two found Tall dead. An autopsy later showed that Tall had died of brain hemorrhaging caused by blunt force trauma to the head. He also suffered fractured ribs and contusions to his hands, arms, chest, abdomen, and lung.

While his brother took money and guns from Tall's house, Weasel Bear switched car batteries and eventually started the Lincoln. The brothers then drove around in the car, purchased some marijuana, stole gasoline, ate lunch, and did some shopping. Meanwhile a neighbor found Tall's body, noticed the missing car, and notified authorities. Police soon spotted Weasel Bear and his brother on a rural road. After a high speed chase, the brothers were arrested and the stolen guns were discovered in the trunk of the car.

2

On January 16, 2002 a federal grand jury indicted Weasel Bear for robbery, burglary, and unlawful killing with malice aforethought during the perpetration of a burglary and robbery. Weasel Bear pled guilty on October 21, 2002 to killing with malice aforethought (second degree murder) and robbery. He reserved his right to appeal any sentence in excess of 30 years.

At sentencing the district court followed the cross reference in the robbery guideline, U.S.S.G. § 2B3.1(c)(1), requiring application of the guideline for first degree murder if a robbery victim has been "killed under circumstances that would constitute murder under 18 U.S.C. § 1111." The court applied the base offense level for first degree murder which is 43, U.S.S.G. § 2A1.1., and also commented that the facts would have supported a first degree murder conviction. After a two level enhancement for a vulnerable victim and a three level reduction for acceptance of responsibility, the total offense level was determined to be 42 with a sentencing range of 360 months to life. The court sentenced Weasel Bear to 55 years on each count to be served concurrently, and Weasel Bear appeals.

Weasel Bear contests application of the guideline cross reference to first degree murder and the 55 year sentence on the robbery count. We review the application of the sentencing guidelines to the facts de novo and findings of fact for clear error. United States v. Willey, 350 F.3d 736, 738 (8th Cir. 2003).

The sentencing guideline for the offense of robbery states "[if] a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such a killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." U.S.S.G. § 2B3.1(c)(1). Weasel Bear argues that this cross reference applies only if the victim was killed outside the territorial jurisdiction of the United States and that it does not fit his case because Tall was killed within such jurisdiction.

3

The guideline at issue, § 2B3.1(c)(1), cannot be understood without considering the statute to which it refers, 18 U.S.C. § 1111. Section 2B3.1(c)(1) follows the felony murder rule incorporated in 18 U.S.C. § 1111(a) which defines any killing committed in the course of a robbery or other enumerated felony as first degree murder and provides that such an offense should be sentenced under the first degree murder guideline. See also United States v. Shea, 211 F.3d 658, 673-74 (1st Cir. 2000) (discussing the guideline cross reference and its incorporation of the felony murder rule in 18 U.S.C. § 1111(a)). Section 1111(b) addresses sentencing options for first and second degree murder as defined in § 1111(a) and committed "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b).

The cross reference in § 2B3.1(c)(1) to the first degree murder guideline in § 2A1.1 requires a sentencing court to consider the full context of the defendant's offense and to account for any killing in the course of a federal robbery, regardless of the situs of the killing. This permits sentencing consideration of the total extent of injury inflicted upon anyone victimized by the offense. In this case, Weasel Bear both committed a robbery and killed his victim within federal territorial jurisdiction, so he comes within the scope of both 18 U.S.C. § 1111 and § 2B3.1(c)(1). Weasel Bear cites no authority for his attempt to limit application of § 2B3.1(c)(1) to killings occurring outside the territorial jurisdiction of the United States, and the guideline's cross reference to the first degree murder guideline, § 2A1.1, is to be applied to killings fitting the definition in § 1111 and occurring within the territorial jurisdiction of the United States. See, e.g., United States v. Harris, 238 F.3d 777, 778-79 (6th Cir. 2001) (affirming application of § 2B3.1(c)(1) to second degree murder during a robbery where both crimes took place within federal territorial jurisdiction).

We decline to adopt Weasel Bear's strained reading of the guideline which would result in a lesser punishment for a killing committed in the course of a federal robbery within the territorial jurisdiction of the United States than, for example, for

4

a killing committed in the course of a federal robbery of a bank which is outside federal territorial jurisdiction. The cases do not support such a reading. See, e.g., Shea, 211 F.3d at 673-75 (applying § 2B3.1(c)(1) to killings in course of bank robbery outside special maritime or territorial jurisdiction of the United States). The language of § 2B3.1(c)(1) is intended to ensure that sentences for killings committed in the course of a federal robbery reflect the seriousness of the real offense conduct and provide just punishment for the offenses. See 28 U.S.C. § 991(b)(1)(B); 18 U.S.C. § 3553(a)(2)(A). Cf. U.S.S.G. § 1B1.3(a)(1)(A) (base offense level should be determined on basis of "all acts and omissions committed . . . or willfully caused by the defendant"); United States v. Wilson, 992 F.2d 156 (8th Cir. 1993) (federal firearms sentencing properly took account of attempted murder as relevant conduct).

We conclude that the district court correctly applied the cross reference in this case. Weasel Bear pled guilty to second degree murder during the course of a robbery within federal jurisdiction, a crime meeting the definition of murder under § 1111,[1] and the court did not err by applying § 2B3.1(c)(1) to Weasel Bear's killing of Tall during a robbery on the Pine Ridge Reservation within the territorial jurisdiction of the United States.

Weasel Bear also argues that application of the cross reference converted his second degree murder plea into a de facto conviction for first degree murder and that the district court improperly used his factual proffer to find that he had committed premeditated murder without his having expressly consented to its use for that purpose. In its comments at sentencing the district court did find that the killing was

---

[1]We note that Weasel Bear probably could have been charged with and convicted of first degree murder since 18 U.S.C. § 1111 defines murder in the first degree to include any murder committed in the perpetration of any burglary or robbery.

premeditated and that Weasel Bear could have been charged with and convicted of first degree murder absent the plea agreement. Weasel Bear is not entitled to prevail on this argument, however, because the cross reference applies to his case even in the absence of premeditation. One who commits a murder as defined by 18 U.S.C. § 1111 during the course of a federal robbery is to be sentenced under the first degree murder guideline. See U.S.S.G. § 2B3.1(c)(1). The statute defines murder to include not only premeditated killings, but also both second degree murder committed without premeditation and any killing with malice aforethought in the course of a robbery. See 18 U.S.C. § 1111(a). Weasel Bear pled guilty to murder in the second degree in the course of a federal robbery, and we conclude that the circumstances of his crime meet the requirements of the cross reference. He was therefore properly sentenced under the first degree murder guideline.

Weasel Bear further argues that the application of the cross reference undermined the purpose of the guideline grouping rules. The sentencing guidelines generally require that crimes which involve substantially the same harm to a single victim and which are part of the same act or transaction be grouped together for purposes of sentencing. U.S.S.G. § 3D1.2. Under the grouping rules the most serious charge, that is the one with the highest offense level, provides the base offense level for the group, and related charges within the group are taken into account through upward adjustments. U.S.S.G. §§ 3D1.3, 3D1.4. Weasel Bear argues that in his case the most serious charge is second degree murder rather than robbery and that the court erred by using robbery as the base charge and then applying the cross reference.

Weasel Bear's grouping argument is without merit because the sentencing guidelines specifically exclude the cross reference in § 2B3.1(c)(1) from the operation of the grouping rules. See U.S.S.G. § 3D1.2. Not only do killing and robbery not inflict substantially the same harm on a victim, but § 2B3.1(c)(1) accounts for both offenses committed by Weasel Bear. While the application of the cross reference to first degree murder appears to Weasel Bear to be contrary to the general grouping

6

principle in § 3D1.2, the fact that the Sentencing Commission has expressly excluded § 2B3.1(c)(1) from the grouping rules is conclusive. See Shea, 211 F.3d 673-74 (rejecting argument that robbery and murder offenses should be grouped under § 3D1.3 and applying first degree murder guideline under § 2B3.1(c)(1)).

Weasel Bear finally argues that the district court erred by sentencing him to more than the statutory maximum of 15 years for robbery. The court's judgment and commitment order indicates that Weasel Bear was sentenced to "55 years (660 months) on each of Counts I and II, to be served concurrently." The government concedes that the district court's written judgment is contrary to law, but argues that its oral pronouncement of a 55 year sentence reflects the total intended time to be served. Nevertheless, the court's oral statement does not differentiate between the counts or indicate in any way that its sentence on the robbery count was within the statutory maximum of 15 years. We therefore reverse and remand for resentencing on that count.

For these reasons, the judgment of the district court is affirmed in respect to the murder count, but reversed in respect to the robbery count. We accordingly remand for resentencing on the robbery count.

_____