# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2542

_____

United States of America

*Plaintiff - Appellee*

v.

Iralee E. French, Jr., also known as Frisco

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 12, 2013
Filed: July 9, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

In a sixteen-day period, Iralee E. French, Jr. robbed the same Kansas City, Missouri, bank twice. French held a crying teller at gunpoint in the first robbery and shot a security guard during the second. A jury convicted French of conspiracy; bank robbery; using, carrying or brandishing a firearm during a crime of violence; attempted bank robbery; and use or discharge of a firearm during a crime of violence.

The district court[1] sentenced French to consecutive sentences totaling 1044 months (87 years) imprisonment. French appeals his conviction and sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On February 9, 2006, at approximately 6:40 a.m., French, wearing a mask and armed with a Mossberg shotgun, and his partner, Thirplus Moose, confronted Chynetta Adams, a teller at a United Missouri Bank (UMB) branch in Kansas City, Missouri, as she arrived for work and exited her car in an underground parking garage. French and Moose led Adams to the bank at gunpoint. Adams let the robbers in the bank, but was unable to comply with their demand to open the vault.

After taking approximately $8,200 from Adams's teller drawer, French and Moose forced Adams back to the parking garage. French pointed his shotgun at Adams and repeatedly ordered her to get in the trunk of her car. Screaming and crying, Adams refused. When French and Moose gave up and fled in Adams's car, Adams returned to the bank and called the police.

On February 24, 2006, French and Moose returned to the same bank at approximately 6:30 a.m. to rob it again. As seventy-year-old security guard Dwight Mayhugh arrived in the UMB parking garage, French shot Mayhugh with a shotgun through the window of Mayhugh's vehicle from approximately eight to ten feet away. The shotgun blast struck Mayhugh in the neck, chest, and shoulder, shattering his right upper arm. The robbers then forced Mayhugh from his vehicle so he could let them in the bank. When Mayhugh proved unable to provide French and Moose access to any cash, they forced Mayhugh back to the garage and stole his vehicle.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

Bleeding heavily from the shotgun wound, Mayhugh sought help at the convenience store across the street from the parking garage. Paramedics arrived and transported Mayhugh to Truman Medical Center where he underwent surgery. As Mayhugh was rushed into an operating room, an emergency physician who had examined Mayhugh briefly before surgery advised a police detective that he did not believe, at that point, that Mayhugh's injuries were immediately life threatening.

Mayhugh tragically died the next day from complications following surgery. Concluding complications from the shotgun wound caused Mayhugh's death, the medical examiner declared Mayhugh's death a homicide. French maintains improper medical treatment by a third-year resident at the hospital caused Mayhugh's death.

After Mayhugh died, French decided to "stay low" in St. Louis, Missouri, until things calmed down. French evaded arrest for almost two-and-a-half years. In August 2008, new leads in the investigation led law enforcement officers to focus on French. On August 27, 2008, officers arrested French in St. Louis for an outstanding warrant and traffic tickets. After advising French of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and obtaining a signed waiver, the officers interviewed French about the robberies and shooting. Hours later, French signed a formal statement, admitting he participated in both robberies and intentionally shot Mayhugh. Officers did not electronically record French's interview, even though recording equipment was available elsewhere in the building.

On September 23, 2008, a grand jury charged French in a nine-count indictment with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Count 1); armed bank robbery with forcible restraint, in violation of 18 U.S.C. §§ 2113(a), (e), and 2 (Count 2); three counts of using, carrying, or brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Counts 3, 7, and 9); killing a person while committing attempted armed bank

robbery, in violation of 18 U.S.C. §§ 2113(a), (e), and 2 (Count 4); using, carrying, and discharging a firearm during a crime of violence causing murder, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), (j)(1), and 2 (Count 5); and two counts of carjacking, in violation of 18 U.S.C. §§ 2119 and 2 (Counts 6 and 8).

On October 16, 2009, French moved to suppress his statement to the police, arguing (1) his statement was involuntary; (2) his Miranda waiver was invalid; and (3) the officers' failure to record his statement violated his due process rights. On January 7, 2010, after an evidentiary hearing, the magistrate judge recommended the district court deny French's motion to suppress. Adopting the magistrate judge's report and recommendation over French's objection, the district court denied French's motion.

After a five-day trial beginning on July 18, 2011, a jury convicted French of conspiracy (Count 1); armed bank robbery (Count 2); using, carrying, or brandishing a firearm during a crime of violence (Count 3); and the lesser included offenses of attempted bank robbery (Count 4); and using a firearm during a crime of violence (Count 5). The jury acquitted French of causing Mayhugh's death and the carjacking-related offenses (Counts 6, 7, 8, and 9).

On June 26, 2012, the district court held a sentencing hearing at which French, through counsel, argued the presentence investigation report (PSR) incorrectly applied United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2B3.1(c)(1)'s cross reference to U.S.S.G. § 2A1.1 for first-degree murder, which raised French's base offense level to 43. At sentencing, French maintained Mayhugh died as a result of medical malpractice following surgery, not as a result of being shot by French. The PSR included an expert report—prepared in connection with a civil malpractice action against Mayhugh's medical providers—indicating Mayhugh would have survived his wounds if not for the medical providers' mistakes, but French

complained the PSR did not include defense exhibits containing the deposition testimony from the malpractice action.

The district court, over the government's objection, received French's exhibits into evidence for purposes of argument as to a reasonable and appropriate sentence under 18 U.S.C. § 3553(a). Stating it had reviewed the expert's report, the district court overruled French's objection to the application of U.S.S.G. § 2B3.1(c)(1)'s first-degree murder cross reference because French intentionally shot and killed Mayhugh in the course of committing armed robbery. See 18 U.S.C. § 1111 (defining first-degree murder). The district court determined the evidence established Mayhugh would not have been hospitalized and facing a difficult medical situation if not for French intentionally shooting him.

Relying on a mitigation video prepared for the court, French requested an aggregate sentence of forty-two years based on his young age at the time of the offense (eighteen) and "genuine remorse." The district court denied French's request for leniency, speaking at length about French's selfishness and "callous disregard" for Adams and Mayhugh during the robberies—French was "willing to kill people and terrorize people for a few thousand dollars." Emphasizing that French intentionally "shot to kill" Mayhugh, the district court concluded French was "a threat to society." After considering the § 3553(a) factors, the district court imposed consecutive sentences totaling 1044 months (87 years) imprisonment. French challenges the admission of his unrecorded statement and his sentence.

## II.    DISCUSSION
### A.    Motion to Suppress

French argues "[t]he [district] court erred by admitting Mr. French's custodial statement into evidence when the police failed to memorialize it by video or audio recording despite ample resources and opportunity to do so, which violated his right to due process under the Fifth Amendment." French's due process argument is

foreclosed by our decision in United States v. Williams, 429 F.3d 767, 772 (8th Cir. 2005), in which we held the Constitution does not mandate electronically recording a defendant's custodial interrogation. See also Jenner v. Smith, 982 F.2d 329, 331 n.2 (8th Cir. 1993) (noting "other circuits have held that incriminating statements are not inadmissible simply because the police failed to record or take notes of the conversations"). The district court properly denied French's motion to suppress.

### B. Sentencing

#### 1. Procedural Error

French contends the district court procedurally erred in imposing his sentence by (1) disregarding the "parsimony principle,"[2] (2) failing to consider the sentencing disparity between French and Moose, (3) concluding French "posed a threat to public safety," and (4) applying the Guidelines cross reference for first-degree murder without addressing testimony that medical malpractice caused Mayhugh's death. "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo." United States v. Barker, 556 F.3d 682, 689 (8th Cir. 2009). "'Procedural error' includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

---

[2]The so-called "parsimony principle" refers to the overarching requirement that the district court "impose a sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to achieve the statutory goals of sentencing. See United States v. Young, 644 F.3d 757, 762 (8th Cir. 2011).

French's claims of procedural error are unavailing. As noted by the government, French's assertion that the district court failed to "recognize the parsimony principle" is "typically associated with substantive error" and generally does not serve as an independent basis for procedural error. United States v. Luleff, 574 F.3d 566, 569 (8th Cir. 2009). In any event, to avoid procedural error, a sentencing court "need not specifically respond to every argument made by the defendant, or mechanically recite each § 3553(a) factor." United States v. Struzik, 572 F.3d 484, 487 (8th Cir. 2009) (internal citations omitted). The sentencing court must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007).

Having thoroughly reviewed the sentencing record in this case, we are satisfied the district court duly considered the evidence, French's arguments, and the § 3553(a) sentencing factors in imposing and explaining French's sentence. Immediately before sentencing French, the district court heard argument from French's counsel, which included a discussion of the "parsimony principle" and an explanation as to why French's youth, remorse, and conduct after the robberies, as well as the expected sentencing disparity between French and Moose, justified a lower sentence. The district court also reviewed French's sentencing memorandum addressing the same issues and took a recess to view French's mitigation video—evidence the district court described as moving. After expressly "taking into consideration all the factors set forth under 18 U.S.C., Section 3553," the district court imposed a sentence specifically justified in reference to nearly all of those factors, describing the "horrendous" nature and circumstances of French's crimes, French's lack of direction and self-control, the need to deter such serious crimes, and the need to protect society from French by imposing "a reasonable and appropriate sentence" under the circumstances. See 18 U.S.C. § 3553(a). The district court did not err.

We also reject French's suggestion that the district court procedurally erred by basing its sentence on a fact French asserts is "clearly erroneous"—namely, that French posed "a 'threat to society.'" French planned and executed two armed robberies in sixteen days, attempted to force a terrified teller into the trunk of her car at gunpoint to escape the first robbery, and during the second robbery, shot a security guard with a shotgun at close range before dragging him, bleeding, through the bank. The district court did not clearly err in finding French was a threat to society.

French's last procedural challenge is to the district court's application of the first-degree murder cross reference in the sentencing Guideline for robbery. Section 2B3.1(c)(1) directs the sentencing court to apply § 2A1.1(a)—the first-degree murder guideline—"[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." Section 1111(a) defines first-degree murder to include "unlawful killing of a human being with malice aforethought . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery." Malice may be shown not only by "proof of a subjective intent to kill," but also "by evidence of conduct which is 'reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that [the factfinder] is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'" See United States v. Black Elk, 579 F.2d 49, 51 (8th Cir. 1978) (quoting United States v. Cox, 509 F.2d 390, 392 (D.C. Cir. 1974)).

French contends the circumstances surrounding Mayhugh's death do not support the district court's application of § 2A1.1(a) because the evidence from the medical malpractice case "established the shotgun injury was completely unrelated to the cause of Mayhugh's death." We disagree.

"The cross reference in § 2B3.1(c)(1) to the first degree murder guideline in § 2A1.1 requires a sentencing court to consider the full context of the defendant's offense and to account for any killing in the course of a federal robbery . . . . This

permits sentencing consideration of the total extent of injury inflicted upon anyone victimized by the offense." United States v. Weasel Bear, 356 F.3d 839, 841 (8th Cir. 2004). "The language of § 2B3.1(c)(1) is intended to ensure that sentences for killings committed in the course of a federal robbery reflect the seriousness of the real offense conduct and provide just punishment for the offenses." Id.

The district court, based upon a preponderance of the evidence—including testimony from the medical examiner that complications from the shotgun wound caused Mayhugh's death and a conflicting opinion from French's expert—determined the circumstances of Mayhugh's death qualified French for § 2B3.1(c)(1)'s cross reference for first-degree murder. In reaching that conclusion, the district court found French intentionally and maliciously "shot to kill" "Mr. Mayhugh with a shotgun at close range without any regard for Mr. Mayhugh's life or well-being, and that Mr. Mayhugh clearly would not have been hospitalized and would not have been faced with the complicated difficult medical circumstances that [led to his death] . . . without Mr. French's actions." We detect no error in the district court's application of the cross reference. The district court properly "consider[ed] the full context of [French's] offense," Weasel Bear, 356 F.3d at 841, accounted for "the total extent of" Mayhugh's injury and tragic death, id., and ensured French's sentence reflected the seriousness of intentionally shooting Mayhugh in such "a deadly fashion."

## B. Substantive Reasonableness

In the absence of significant procedural error, we review the substantive reasonableness of the sentence imposed for an abuse of discretion. Feemster, 572 F.3d at 461. "Substantive appellate review in sentencing cases is narrow and deferential; it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as

substantively unreasonable." United States v. Kelley, 652 F.3d 915, 918 (8th Cir. 2011) (quoting Feemster, 572 F.3d at 464) (internal marks omitted).

"The decision to impose a consecutive sentence is also reviewed for reasonableness similar to an abuse of discretion standard." Id. (quoting United States v. Benton, 627 F.3d 1051, 1055-56 (8th Cir. 2010)) (internal marks omitted). "A district court abuses its discretion when it fails to consider a relevant factor, gives significant weight to an irrelevant or improper factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." United States v. Jones, 509 F.3d 911, 913 (8th Cir. 2007). "If the defendant's sentence is within the Guidelines range, then we may, but are not required to, apply a presumption of reasonableness." Feemster, 572 F.3d at 461 (quoting Gall, 532 U.S. at 51) (internal marks omitted).

French asserts his sentence was "greater than necessary" to satisfy the sentencing goals of § 3553(a) and is substantively unreasonable because the district court failed "to accord any weight to [his] youth, remorse, history of severe depression, and extremely disadvantaged upbringing." The record belies French's assertion.

As noted above, the district court carefully considered French's asserted grounds for mitigation and was even moved by French's mitigation evidence. Yet the district court determined the serious nature and "horrendous" circumstances of French's crimes and his willingness "to kill people and terrorize people for a few thousand dollars" not only outweighed the mitigating factors, but also warranted a severe sentence to deter such "callous" conduct and protect society from French. The district court further decided French demonstrated a lack of remorse and an unwillingness to take responsibility for his actions by evading capture for two-and-a-half years after Mayhugh's death. Although the consecutive sentences the district

court imposed for French's various crimes unquestionably result in a long prison term, this long term is not substantively unreasonable under the tragic and calloused circumstances of French's crimes.

## III.    CONCLUSION

Finding no error, we affirm French's conviction and sentence.

_____