FILED
United States Court of Appeals
Tenth Circuit

**March 1, 2017**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DERRICK ANTHONY SANDOVAL,

Defendant - Appellant.

No. 15-1311
(D.C. No. 1:14-CR-00327-CMA)
D. Colo.

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit Judges.

---

Derrick Sandoval was convicted of various drug crimes. He contends the district court made a number of errors that undermined the fairness of his trial. Because he did not object at the time, we review most of his arguments for plain error. In sum, we conclude the district court did not plainly err in (1) allowing opinion testimony from the detectives who investigated the drug ring;

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(2) allowing an officer to testify both as a fact and expert witness; or (3) failing to

exclude testimony regarding the *Miranda* warning given to Sandoval.

We AFFIRM.

# I. Background

Sandoval was subject to an investigation for distribution of

methamphetamine in the Denver area. Based on surveillance and a recorded

conversation from an attempted controlled purchase, Denver detectives obtained

and executed a search warrant on Sandoval's residence, where they found various

drug paraphernalia.[1] When confronted by officers, Sandoval made several

incriminating statements. For instance, during the course of the search of his

residence, Sandoval asked Detective Loveall about the drugs found and how much

they weighed. Although he later disclaimed any ownership or knowledge of the

guns, Sandoval also asked Detective Gutke if he liked the "MAC 10" found inside

---

[1] Items seized included 13.1 grams of methamphetamine, sandwich bags, rubber bands, a "cutting agent" or "filler" substance allegedly used to increase the volume of methamphetamine for distribution, a "pay/owe sheet" or "ledger," a list of phone numbers, nine cell phones, two different digital scales, five driver's licenses belonging to Sandoval, approximately $1,400 in cash, one $20 bill from the pool of traceable funds given to a confidential informant for use in the attempted controlled purchase, a baseball hat embroidered with narcotics officer logos, a marijuana grinder, a Ruger .40 caliber handgun and case, a MasterPiece Arms 9 mm handgun (modeled after, and occasionally referred to as, an Ingram MAC 10), a box of .40 caliber ammunition, two handgun magazines, at least nineteen empty ammunition shell casings inside firework tubes, a black tactical vest, a ballistics vest, boxes containing surveillance cameras, and a healthcare identification card belonging to Sandoval.

a sub-woofer, and admitted there was a handgun inside the house.  Nor was Sandoval shy about his role in narcotics trafficking.  He told Detective Gutke that he had been getting a pound or two of methamphetamine at a time from a person named "Pices" and selling drugs to earn money because he had a hard time finding employment.  He suggested the detectives would have found more incriminating evidence if they had searched his house a week earlier, but that he was stopping drug distribution because he recently obtained a new job.

During a similar interaction with Detective Dompier, Sandoval said he had not sold drugs recently and was getting out of the business, planning on a new career path so he could turn his life around and take care of his eight-year-old daughter.  While in jail pending trial, Sandoval engaged in numerous conversations regarding the items collected from his residence and, through these conversations, acknowledged his awareness of the specific firearms and narcotics recovered.

Based upon the seized evidence, incriminating statements, and testimony presented at trial, Sandoval—a previously convicted felon—was convicted by a jury and sentenced to a total of 240 months' imprisonment for: (1) possession of firearms and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1); (2) possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a

drug trafficking offense in violation of 18 U.S.C. § 924(c); and (4) possession of body armor by a violent felon in violation of 18 U.S.C. § 931.

## II.  Analysis

Sandoval raises three issues related to the district court's trial rulings: (1) allowing two detectives to testify about linguistics and indicia of narcotics distribution without first qualifying the detectives as experts; (2) permitting an officer to testify as both an expert and fact witness without properly cautioning the jury about these dual roles; and (3) allowing a detective to mention that when arrested Sandoval invoked his *Miranda* rights to remain silent and not to incriminate himself.  He also argues that the cumulative effect of these errors deprived him of a fair trial.

### A.  Opinion Testimony

Sandoval first contends portions of Detective Loveall's and Detective Dompier's testimonies were expert opinion wrongfully admitted in the guise of lay opinion.

Sandoval failed to object to the detectives' testimony at trial and therefore did not put the district court on notice that the testimony was improper under the Federal Rules of Evidence.[2]  A district court's decision to admit expert or lay

---

[2]  Sandoval's counsel did make a single contemporaneous objection that Detective Dompier was engaged in "improper opinion testimony" when testifying as to items he was trained to look for when collecting evidence related to

(continued...)

-4-

testimony is ordinarily reviewed for abuse of discretion but, as here, for plain error when a party fails to contemporaneously object. *United States v. Brooks*, 736 F.3d 921, 929–30 (10th Cir. 2013). Plain error occurs when there is: (1) error; (2) that is plain; which (3) affects substantial rights; and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 930. An otherwise plain error may be harmless and fail to constitute adequate grounds for reversal when it is unlikely that the testimony on a particular issue "had any serious impact on the outcome of the trial"—*e.g.*, when the jury has already heard similar testimony, or other evidence of a defendant's guilt presented at trial was "substantial" or "strong." *See United States v. Hinson*, 585 F.3d 1328, 1338 (10th Cir. 2009).

To properly preserve an issue, a party's contemporaneous objection must be sufficiently specific. *See, e.g.*, *United States v. Battles*, 745 F.3d 436, 452 (10th Cir. 2014) ("[I]n light of Ms. Battles's failure to 'offer up a timely and specific trial objection' to the evidence, we review her claim for plain error." (alteration incorporated)). *See also Elonis v. United States*, 135 S. Ct. 2001, 2017 (2015) (Alito, J., concurring in part and dissenting in part) ("[A] defendant [must] 'inform the court of the specific objection and the grounds for the objection.' An

---

(...continued)
narcotics trafficking. *See* R., Vol. 2, at 473–74. But the challenged testimony was not lay or expert opinion, nor did the objection notify the court that the detective was impermissibly offering expert opinion testimony in the guise of lay opinion.

objection cannot be vague or open-ended. It must *specifically* identify the alleged error. And failure to lodge a sufficient objection 'precludes appellate review,' except for plain error." (citations omitted)). Even if counsel "might 'not explain the evidentiary basis of his argument as thoroughly as might ideally be desired,'" counsel must at least "substantially satisf[y] the requirement of putting the court on notice as to his concern." *Prager v. Campbell Cty. Mem'l Hosp.*, 731 F.3d 1046, 1054 (10th Cir. 2013) (citations omitted).

Sandoval contends the detectives offered improper expert opinion testimony on linguistics and indicia of narcotics distribution. He argues the detectives were never endorsed as experts, never disclosed their probable testimony, and, in any event, were not permitted under the federal rules to offer expert opinion as lay witnesses.

Two federal rules explain the admissibility of opinion evidence. Under Rule 701, a non-expert witness's testimony "in the form of an opinion" is limited to (1) an opinion rationally based on the witness's perception; (2) that is helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 (pertaining to expert opinion). Fed. R. Evid. 701. If, on the other hand, a witness's opinion testimony does not meet the standards of Rule 701, the witness cannot be considered a lay witness and must be qualified as an expert pursuant to Rule 702. Rule 702 provides, among other things, that an

expert must have specialized knowledge or expertise that will help the jury "understand the evidence or [ ] determine a fact in issue." Fed. R. Evid. 702(a). Rule 702 requires a district court "to assess proffered expert testimony to ensure it is both relevant and reliable." *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012).

Endorsing a witness as an expert also triggers Federal Rule of Criminal Procedure 16's pretrial disclosure requirements, which ensure that an opposing party will have time to adequately prepare for trial (*e.g.*, to prepare "an effective cross-examination challenging the experts' qualifications and conclusions," or to obtain a competing expert). *See United States v. Banks*, 761 F.3d 1163, 1190 (10th Cir. 2014). To this end, Rule 16 provides,

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rule[] 702 . . . of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G). Failure to comply with a Rule 16 request could subject the government to sanctions, including exclusion of the expert testimony. Fed. R. Crim. P. 16(d)(2); *Banks*, 761 F.3d at 1198. And a party may not circumvent the heightened requirements of Federal Rule of Evidence 702 and corresponding Federal Rule of Criminal Procedure 16 disclosure requirements by offering expert testimony in the guise of lay opinion. *See United States v.*

*Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015), *cert. dismissed in part*, 136 S. Ct. 1511 (2016), *and cert. denied*, 136 S. Ct. 2046 (2016); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011).

We have repeatedly explained the contours of lay and expert opinion. A witness's conclusions and opinions fell under Rule 701 when underlying mathematical calculations, for example, were "not so complex a task that litigants need to hire experts in order to deem the evidence trustworthy," but rather "well within the ability of anyone with a grade-school education." *James River*, 658 F.3d at 1214 (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005)). In contrast, a CEO's testimony about his business's lost profits was inadmissible under Rule 702 because his results were based on sophisticated economic models including "moving averages, compounded growth rates, and S-curves" beyond the ken of an ordinary juror. *James River*, 658 F.3d at 1214 (quoting *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004)).

In short, Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *See James River*, 658 F.3d at 1214 (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)). A lay witness may offer only "observations that are common enough and require a limited amount of expertise, if any." *James River*, 658 F.3d at 1214

-8-

(alterations incorporated) (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)).

Sandoval claims Detective Loveall improperly relied on his background and experience in narcotics investigations to opine about the meaning of ostensibly coded language used in the course of the attempted controlled purchase. For example, Detective Loveall testified that the word "paper" may refer to "money," the number "2" may refer to ounces of methamphetamine, the numbers "1,400" and "3,700" may refer to "$1,400" and "$3,700," and the word "heads" may refer to "customers." R., Vol. 2, at 312–15, 406.

Likewise, Sandoval claims Detective Dompier improperly relied on his background and experience in executing search warrants and narcotics trafficking to testify about indicia of distribution and drug ledgers. For example, Detective Dompier testified that when he conducts a search warrant he looks for "indicia of distribution . . . that would show the business side of narcotics distribution," including, "[s]cales, paperwork, photographs, phone numbers, things along those lines," and "items of paraphernalia," including "pipes, scales, baggies, needles, spoons, cotton balls, on and on." R., Vol. 2, at 472–74. Detective Dompier also testified that he collected a "pay/owe sheet" or "ledger" from Sandoval's residence, which he described as "one piece of paper that had numerous names and s [sic] large number of phone numbers on it associated with another piece of paper, which [he] believed, due to the writing, to be a ledger, due to mathematics

and some of the terms that were written . . . such as 'payment,' 'balance,' and dates written in the form of '7-3,' '7-6,' '7-4.'" *Id.* at 472, 476–77.

In previous cases, we have considered the admissibility of non-expert witness testimony regarding the meaning of language used in the drug trade. For the most part, our cases have allowed witnesses to testify and explain coded language without first being qualified as experts. *See, e.g.*, *Brooks*, 736 F.3d at 927, 929 (key government witness explained "code words and drug lingo used"); *United States v. Patterson*, 713 F.3d 1237, 1240–41 (10th Cir. 2013) (DEA special agent interpreted a number of recorded conversations using "coded language").

With this background in mind, the district court did not commit plain error. First, it is doubtful any error existed let alone that it was plain. Neither the translations of language from the recorded conversation nor the inferences drawn from them were beyond the capacity of an ordinary person. Detective Loveall's observations (*e.g.*, that the word "paper" may refer to "money" and the word "heads" may refer to "customers") were not so complex as to require the special skill and expertise of an expert. Nor was Detective Dompier's testimony concerning evidence related to narcotics trafficking sufficiently specialized to trigger the requirements of Rule 702. We agree with the government that the testimony elicited here was "not rocket science" and a reasonable juror "in many

cases could easily understand what was going on" without the need to invoke the requirements of Rule 702. *See* Aple's Br. at 15.

Moreover, both detectives were directly involved in the investigation and gave testimony that rationally could be based on their own perception of the events and evidence. Even if the detectives relied on some of their background experience and training, any such reliance was balanced with their personal experience with the case and evidence at hand. It is neither clear nor obvious that the challenged testimony falls outside of the scope of Rule 701.

Finally, Sandoval has not made a showing under the third prong of plain error that his "substantial rights to a fair trial" were implicated by the unobjected-to testimony. Sandoval's counsel suggested "that it would suffice that the prosecution simply didn't comply, as they were required to," [Oral Arg. Recording at 8:09–8:15.] with Federal Rule of Criminal Procedure 16's pretrial disclosure requirements. But this broad allegation of mere noncompliance does not come close to satisfying the showing required by the third prong of plain error review, and Sandoval points to no specific prejudice arising from the challenged testimony, especially in light of the volume of other incriminating and probative evidence pointing to guilt introduced to the jury.

In sum, the district court did not commit plain error in admitting the detectives' testimony.

### B. Dual Capacity Testimony

Sandoval next contends the district court committed plain error when it allowed Officer Barben to testify as both an expert and as a fact witness without taking precautionary measures to avoid jury confusion. Sandoval neither requested any specific measures at trial nor objected to Officer Barben's testimony on these grounds.

We recognize that witnesses who testify in both a lay capacity and an expert capacity may present special risks at trial. The "aura of special reliability and trustworthiness surrounding expert testimony," may give the witness "unmerited credibility" and "create[] a risk of prejudice 'because the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'" *United States v. Dukagjini*, 326 F.3d 45, 53–54 (2d Cir. 2002) (citations omitted). In light of this concern, some circuits have encouraged district courts to take precautionary measures, including warning the jury about the witness's dual roles or bifurcating the questioning to clearly demarcate lay and expert testimony offered by the same witness, to protect against these dangers. *See, e.g.*, *United States v. Rios*, 830 F.3d 403, 414–15 (6th Cir. 2016), *cert. petition filed*, No. 16-7314 (Dec. 27, 2016); *United States v. Moralez*, 808 F.3d 362, 365–67 (8th Cir. 2015); *United States v. Haines*, 803 F.3d 713, 730–32 (5th Cir. 2015); *United States v. Vera*, 770 F.3d 1232, 1242–43 (9th Cir. 2014); *United States v. Garcia*,

752 F.3d 382, 392 (4th Cir. 2014); *United States v. Tucker*, 714 F.3d 1006, 1016 (7th Cir. 2013); *United States v. Flores-De-Jesus*, 569 F.3d 8, 21 (1st Cir. 2009); *Dukagjini*, 326 F.3d at 53–56.

Despite these risks, we have "decline[d] to adopt a *per se* rule prohibiting the use of case agents as experts," choosing instead to rely on determinations made by "the trial judge who is attuned to the dynamics of the trial." *United States v. Mendoza*, 236 F. App'x 371, 384 (10th Cir. 2007) (unpublished). And Sandoval has not cited *any* case from *any* circuit finding a district court's failure to take such measures constitutes reversible error under a plain error standard of review.

Sandoval fails to overcome plain error here. Officer Barben was present during the search of Sandoval's residence and called to testify about his participation in the search and observations of materials found in the home. But in addition, the prosecution went on to qualify Officer Barben as an expert on whether the items found were consistent with involvement in the drug trade. Officer Barben thus testified, for example, about "some of the common-known tools that go with drug dealing," including: (1) "paraphernalia, such as the packaging you are going to use to sell; so small baggies, medium baggies, large baggies"; (2) "the things, like, that you will need for protection of your product; guns, knives, stun guns, things of that nature"; (3) "scales, because you need something to weigh it out so the customer knows what they are getting"; (4)

-13-

"surveillance equipment; cameras, especially on residential operations, . . . to survey what is going on outside of your home" and "thwart robbery attempts of your product"; and (5) "use of multiple phones that do not come back to the true identity of that person." R., Vol. 2, at 623–25. He also gave his opinion, based on his "experience in street-level narcotics," that 13.1 grams of methamphetamine (*i.e.*, the amount recovered from Sandoval's residence) was a "selling amount" more consistent with distribution than personal use, which was "typically half a gram to one-and-a-half grams, not 13.1 grams." *Id.* at 628–29. Officer Barben further testified that the type of "fold-top sandwich bags" recovered from Sandoval's residence were "packaging for methamphetamine . . . [i]n a certain technique," and that "rock" may mean "crack cocaine." *Id.* at 630–31, 653–54. In both instances, however, the district court clarified that Officer Barben was not talking about the baggies collected in particular (but about that type of bag in general) and not saying "rock" meant crack cocaine in the recorded conversation (but merely that it could have that meaning in general). *Id.* at 631, 653.

Both lay and expert aspects of Officer Barben's testimony were independently admissible. Given this, Sandoval objects only that the district court erred by failing to instruct the jury as to the differences between Officer Barben's roles in providing the lay and expert testimony. None of our cases require a blanket instruction in such circumstances, so it is doubtful any error was plain. Nor has Sandoval pointed to any prejudice arising from the testimony or

-14-

Officer Barben's dual capacity. To the extent Sandoval claims dual capacity testimony is presumptively, or at least inherently, prejudicial in the absence of proper prophylactic measures, Sandoval misunderstands the burdens associated with plain error review. Even assuming the district court erred in failing to take *sua sponte* precautionary measures concerning Officer Barben's dual role, Sandoval cannot show a plain error affecting his substantial rights or the integrity of the judicial process.

### *C.* **Miranda** *Reference*

Sandoval also challenges the district court's failure to *sua sponte* correct Detective Loveall's brief reference to Sandoval's invocation of his constitutional rights to remain silent and not incriminate himself. He claims the district court committed plain error by failing to strike the testimony or provide a curative instruction to the jury.

It is axiomatic that the government cannot "penalize an individual for exercising his Fifth Amendment privilege" and the "prosecution may not, therefore, use at trial the fact that [a defendant] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 & n.37 (1966). *See also Doyle v. Ohio*, 426 U.S. 610, 617–19 (1976). But not all violations of this categorical prohibition constitute reversible error. Any error in allowing the prosecution to comment on a defendant's post-*Miranda* silence or invocation is likely to fail the third prong of plain error review when a "single,

-15-

isolated reference . . . could not have affected the jury's verdict, considering the substantial evidence supporting the verdict." *See Bland v. Sirmons*, 459 F.3d 999, 1023 (10th Cir. 2006).

The only mention of Sandoval's invocation of his *Miranda* rights was a one sentence reference in the midst of several hours of testimony from Detective Loveall, testimony that spans 123 pages of the voluminous record.  The erroneous reference occurred as follows,

| | |
|---|---|
| GOV'T COUNSEL: | Did you transport Mr. Sandoval? |
| DET. LOVEALL: | Yes. |
| GOV'T COUNSEL: | Did you have any conversations during this transportation? |
| DET. LOVEALL: | I advised him of his Miranda rights. |
| GOV'T COUNSEL: | And what did Mr. Sandoval say? |
| DET. LOVEALL: | That he didn't want to speak with me or to incriminate himself any further. |
| GOV'T COUNSEL: | Did Mr. Sandoval make any further statements? |
| DET. LOVEALL: | Not on the way to the jail. |

R., Vol. 2, at 324.  This single, isolated reference could not have affected Sandoval's substantial rights required by the third prong of plain error review. The ample evidence of Sandoval's guilt—including the drug paraphernalia and money seized from his residence; the numerous incriminating statements he made before and after he invoked his *Miranda* rights during the course of the investigation, pretrial preparations, and in jail; and other unchallenged evidence and trial testimony—confirms the single comment did not have any influence upon the jury or the outcome of the trial.

To the extent Sandoval now complains of the district court's failure to correct the error by issuing a curative instruction, that argument is waived. Not only did Sandoval fail to contemporaneously object, but when Sandoval's counsel eventually raised the issue, the district court (1) explained its decision not to intervene *sua sponte*;[3] (2) admonished the government to avoid mentioning the fact;[4] and (3) *offered to give a curative instruction which Sandoval's counsel declined*.[5] Based on our review of the reference, its context, and the district court's and defense counsel's responses, we hold the decision not to bring further attention to the reference was a calculated strategic decision; not reversible error.

In sum, the reference to Sandoval's invocation of his *Miranda* rights does not constitute plain error.

_____

[3] "I could have addressed it at the time. But you did not make an objection . . . I was not about to insert myself and highlight the testimony any more than I needed to without the defendant raising the objection. . . . I could have cured it at the time and said strike it. I didn't do that on my own because I think it just highlights it more. I thought maybe it was part of your strategy just to let it go." R., Vol. 2, at 445–46.

[4] "It is inappropriate for the Government or any witness for the Government to indicate to this jury that he invoked his Fifth Amendment rights. So I want you to instruct your witnesses that they are not to raise that as an issue or in testimony. . . . I am instructing the Government, it needs to tell its witnesses they cannot bring up that type of testimony." R., Vol. 2, at 447–48.

[5] "If you want me to do anything at this point to try to correct it, I would do it." R., Vol. 2, at 450. But Sandoval's counsel declined the court's offer: "I think that I am going to, for a tactical decision, at this point I am not going to ask the Court to give any sort of curative or ask the jury to disregard, because I think that it will highlight that further." *Id.*

### D. *Cumulative Error Analysis*

Finally, Sandoval claims that even if each of the three alleged evidentiary errors were individually harmless, their aggregate negative effect requires reversal.

Cumulative error analysis generally "aggregates all errors found to be harmless and 'analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *United States v. Willis*, 826 F.3d 1265, 1280 (10th Cir.) (citation omitted), *cert denied*, 137 S. Ct. 405 (2016). There "must be at least two errors before we may find cumulative error," otherwise "there are not multiple errors to cumulate." *Id.* Each error considered must be an "actual error" (*i.e.*, a matter deemed to be error); this court does not consider "the cumulative effect of non-errors." *United States v. Harlow*, 444 F.3d 1255, 1269 (10th Cir. 2006). But this court need not determine there was error in order to dismiss a defendant's cumulative error argument; we can assume error for purposes of the analysis. *See, e.g.*, *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002).

Sandoval has established, and the government has conceded, only one actual error: Detective Loveall's comment regarding Sandoval's invocation of his Fifth Amendment *Miranda* rights. For this reason, his cumulative error argument fails. But even if the other claims on appeal had merit, Sandoval was still not deprived of a fair trial. In the aggregate, none of the claims affected Sandoval's

substantial rights. The jury heard unchallenged testimony and evidence from a variety of witnesses that confirm the correctness of the jury's verdict. Upon consideration of all the claimed errors and the record as a whole, cumulative error analysis does not warrant reversal.

## III. Conclusion

We AFFIRM the district court's judgment.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge