# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1245
_____

United States of America

*Plaintiff - Appellee*

v.

Marques Smith, also known as CC

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: December 15, 2020
Filed: July 20, 2021

_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

A jury convicted Marques Smith for conspiracy to distribute a controlled substance. We affirm the district court's[1] denial of his motion for judgment of acquittal.

---

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

I.

Smith was indicted for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). The Government filed a superseding indictment and information alleging Smith had a prior conviction for a serious drug felony. Smith decided to go to trial.

A.

Smith tried to prevent the Government from offering evidence that he trafficked synthetic marijuana and that he possessed a firearm. The district court admitted the evidence, finding the drug trafficking and firearm possession were intrinsic to the conspiracy.

The day before trial, the Government gave Smith a "document dump" that included hundreds of pages of witness statements. Smith says that many of the documents had information he had not seen before. The Government says it followed the district court's discovery order and timely released previously redacted discovery, but the only differences between what he received earlier and what he received the day before trial were personal identifiers (*e.g.*, social security numbers) and information about unrelated investigations. According to the Government, names of witnesses were never redacted. Neither redacted nor unredacted documents are in the record on appeal.

Smith argues he was unable to fully review the document dump before trial because of a district court Standing Order. The Standing Order bars counsel from leaving copies of sealed or restricted documents with a criminal defendant in custody:

Federal court officers or employees (including probation officers and federal public defender staff), retained counsel, appointed CJA panel attorneys, and any other person in an attorney-client relationship with a detained or incarcerated person may, consistent with this order, review any sealed or restricted portions of the file with their client, but may not provide copies to the defendant.

United States District Court, District of South Dakota, Amended Standing Order 16-04.6.

At the pretrial conference, Smith's lawyer asked to leave the documents with Smith. The court refused because it was concerned cooperating witnesses could be housed in the same jail. Counsel then asked if the documents could be left in a visitation room for Smith to review. The district judge said this would be okay if the jail allowed it. The jail refused, and counsel did not review the unredacted discovery with Smith before trial.

Smith never objected that the Standing Order violated the Constitution or the Federal Rules of Criminal Procedure. Nor did he move for a continuance after his requests were refused.

B.

Sara Pray, who met Smith in 2011, was the first witness at trial.[2] Smith gave Pray methamphetamine within a month of meeting her. For the next six years, they distributed methamphetamine together. Pray saw multiple people pay Smith for methamphetamine using cash and, in one case, a silver handgun. According to Pray, Smith had methamphetamine "every time [she] was around him." Trial Tr. 23.

Pray also testified that she went on multiple trips with Smith to get methamphetamine. Each time, they purchased multiple ounces of

---

[2]While Smith disputes the reliability of much of the evidence presented at trial, we describe the case the jury heard at trial.

methamphetamine, including two trips when they purchased one and two pounds of methamphetamine, respectively. Pray also testified that Smith would pick up marijuana in Colorado Springs.

Smith's other distributors also testified. Brooke Shields (not that Brooke Shields) met Smith in 2015. Over two years, she sold half a pound of methamphetamine for Smith. Shields knew Smith usually had an ounce of methamphetamine with him.

Ashley Ross also sold methamphetamine for Smith. After her main source of methamphetamine was cut off, Ross made between $1,000 and $3,000 selling for Smith. Ross also saw Smith sell methamphetamine to "[a]t least 15" others. Trial Tr. 86.

Several direct and downstream purchasers also testified. Shanna St. Cloud said she purchased methamphetamine from one of Smith's intermediaries. Franki Zephier testified she accepted methamphetamine from Smith as a form of rent payment. Merle Seeking Land said he purchased methamphetamine directly from Smith.

Members of Smith's sales network also testified about synthetic marijuana. Pray and Ross testified that they saw Smith selling synthetic marijuana and Shields said she purchased synthetic marijuana from Smith.

A few of the witnesses also testified that Smith possessed firearms. In addition to seeing Smith trade methamphetamine for a firearm, Pray saw Smith with a gun several other times. Zephier once saw a gun through Smith's shirt and pants. Seeking Land saw Smith with two handgun magazines when he bought methamphetamine from him.

C.

The jury convicted Smith of conspiracy to distribute more than 500 grams of methamphetamine. Smith filed a motion for a judgment of acquittal, or in the alternative, for a new trial, arguing there was insufficient evidence and that the evidence of marijuana trafficking and firearm possession were improperly admitted. The district court denied the motion and sentenced him to 235 months in prison, followed by 10 years of supervised release. This appeal followed.

II.

Smith first argues that the district court erred by admitting evidence he possessed guns and trafficked synthetic marijuana because it was unlawful propensity evidence under Federal Rule of Evidence 404(b). We review a district court's decision to admit Rule 404(b) evidence for an abuse of discretion and will reverse "only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct." *United States v. Young*, 753 F.3d 757, 767 (8th Cir. 2014) (citation omitted).

Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "Rule 404(b) applies only to extrinsic, not intrinsic, evidence." *Young*, 753 F.3d at 770. "Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred." *Id.* (citation omitted). That is, intrinsic evidence "completes the story or provides a total picture of the charged crime." *Id.* (citation omitted).

We first address the guns, then the evidence of Smith's trafficking synthetic marijuana.

A.

Smith argues that the district court abused its discretion by permitting testimony that he possessed firearms. The district court found the evidence was intrinsic. We agree. "Weapons are key tools in the drug trade and can be evidence of a drug conspiracy." *United States v. Dierling*, 131 F.3d 722, 732 (8th Cir. 1997). Smith argues that the tools-of-the-drug-trade analysis doesn't work here because the guns were not closely tied to Smith's alleged drug conspiracy. But a firearm's proximity to drugs is an avenue to admissibility at trial. *See United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010) ("Firearms may be probative of an ongoing drug conspiracy, especially when they are found in close proximity to drugs.").

At trial, Merle Seeking Land testified that he saw Smith with an ammunition magazine when he bought methamphetamine. Sara Pray also testified that she saw Smith trade methamphetamine for a gun. This testimony closely tied the firearm possession to the drugs, so we find no abuse of discretion in admitting the firearm as intrinsic evidence.[3]

B.

Smith next argues that the district court abused its discretion by admitting evidence that he trafficked synthetic marijuana. Smith asks us to follow a decision from the Seventh Circuit holding that Rule 404(b) evidence may not be used for identification purposes where it masquerades as pure propensity evidence. *United States v. Gomez*, 763 F.3d 845, 863 (7th Cir. 2014) (en banc). *Gomez* involved a conspiracy to distribute cocaine. Prior to trial, the district court admitted evidence of a small amount of cocaine found in the defendant's bedroom to show that he was attached to a pseudonym involved in a cocaine dealing conspiracy, despite no

---

[3]Because Smith traded methamphetamine for a firearm, the testimony about Smith's firearm ownership was also direct evidence of distribution.

evidence that the cocaine in the bedroom was the product of the conspiracy. *Id.* at 852. Because there was no evidence linking the cocaine found in the bedroom to the cocaine distributed by the conspiracy, the court found that the cocaine was used as improper propensity evidence to show that because the defendant owned cocaine, he was also distributing cocaine. *Id.* at 863.

*Gomez* is a different case: there was no evidence tying the cocaine to the conspiracy. Here, the evidence of the marijuana trafficking was contemporaneous and intertwined with the conspiracy to distribute methamphetamine. Indeed, the Seventh Circuit suggested that it would be permissible to admit the evidence under circumstances like this. *See id.*

In *United States v. Thomas*, we held that a defendant's distribution of crack cocaine was intrinsic evidence where it was "blended or connected" to the underlying charge of heroin distribution. 760 F.3d 879, 884–85 (8th Cir. 2014) (citation omitted). Members of the conspiracy testified that they bought both crack and heroin from the defendant. *Id.* The same is true here. Smith's downstream and midstream customers testified to buying both methamphetamine and synthetic marijuana. We find no abuse of discretion in admitting the evidence of synthetic marijuana trafficking as intrinsic to his methamphetamine distribution.

III.

Smith next challenges the district court's denial of his request to review the sealed discovery without counsel supervision. He makes two arguments. First, he claims that the district court's Standing Order violates Federal Rule of Criminal Procedure 16(d)(1). Second, he says that the rule and timing of the unredacted disclosure violated his Sixth Amendment right to cross-examination and that he was materially prejudiced because he was unable to prepare for cross-examining witnesses at trial.

## A.

Smith's first argument fails on its own terms. Smith claims that the district court's Standing Order violates Rule 16(d)(1), which he says provides that "[u]pon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred." Smith Br. 27 (alteration in original). According to Smith, the Standing Order flouts the "sufficient showing" requirement.

But Rule 16(d)(1) does *not* have a "sufficient showing" requirement. Instead, it says only that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). So the Standing Order does not run afoul of Rule 16(d)(1).

## B.

Smith next argues that the Standing Order, combined with the timing of the disclosure, violated his Sixth Amendment right to cross-examination. Smith did not make this argument to the district court, nor did he request a continuance, so we review for plain error. *See United States v. Clarke*, 564 F.3d 949, 957 (8th Cir. 2009). To show plain error, Smith must show that (1) the district court committed an error; (2) the error is plain; and (3) the error affects his substantial rights. *See United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020). Assuming the first three prongs are met, "[w]e will exercise our discretion to correct such an error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted). Smith bears the burden of establishing all four prongs of plain-error review. *See United States v. Barthman*, 919 F.3d 1118, 1121 (8th Cir. 2019).

On the record before us, Smith cannot show any purported error affected his substantial rights. The Government contends that Smith received all necessary discovery a week before trial. Smith says that is not true. Neither the redacted nor unredacted witness statements are part of the appellate record, nor can we find them

-8-

in the district court's docket. *See* Smith Add. (only including final judgment, one-page order requiring discovery in compliance with standing order, and minute order granting in part and denying in part motion *in limine*); D. Ct. Dkt. 94 (appeals record transmitted to court of appeals only including sentencing documents, transcripts of pretrial conference and jury trial, and jury trial exhibits). We have no basis for judging the degree of prejudice—if any. *Cf. Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."). Smith therefore did not meet his burden of showing plain error.

## IV.

Smith's final argument is that there was insufficient evidence to support his conviction for conspiracy to distribute methamphetamine. We review challenges to the sufficiency of the evidence *de novo*. *United States v. Johnson*, 745 F.3d 866, 868–69 (8th Cir. 2014). "We view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence." *United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013) (citation omitted). "We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (citation omitted).

Smith says the Government did not show an agreement or common understanding necessary to sustain a conspiracy conviction. "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Rolon–Ramos*, 502 F.3d 750, 754 (8th Cir. 2007) (citation omitted).[4] "In a drug conspiracy case, . . . the government is not required to present direct evidence of an explicit agreement; juries may rely upon

_____

[4]Smith was charged with, and convicted of, conspiracy to distribute more than 500 grams of methamphetamine. He does not argue that the evidence is insufficient as to quantity.

circumstantial evidence to discern a tacit agreement or understanding between the co-conspirators." *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010).

There was plenty of evidence to show a conspiracy. At trial, the Government brought forward many witnesses who testified about working with Smith at various links in his drug distribution chain. Pray testified that she made multiple trips with Smith to Kansas City and Colorado Springs to acquire methamphetamine from Smith's distributors. Pray also testified that she distributed methamphetamine with Smith for six years. Shields testified that she sold about half of a pound of methamphetamine for Smith. Ross similarly testified to distributing methamphetamine for Smith, and St. Cloud testified that she purchased methamphetamine from Smith's distributors. These relationships existed over a prolonged period, and a reasonable jury could find a methamphetamine distribution model agreed to by at least one of these participants.

Smith challenges the reliability of these witnesses because they were impeached at trial. But in reviewing the sufficiency of the evidence, "[i]t is axiomatic that we do not pass upon the credibility of witnesses or the weight to be given their testimony." *United States v. Clay*, 618 F.3d 946, 950 (8th Cir. 2010) (citation omitted). "Credibility determinations are uniquely within the province of the trier of fact, and are entitled to special deference." *United States v. Goodale*, 738 F.3d 917, 923 (8th Cir. 2013) (citation omitted). We see no reason to upset the jury's credibility determinations here.

V.

The judgment of the district court is affirmed.

_____