# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2471
_____

Tiffany Janis

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: May 10, 2023
Filed: July 14, 2023
_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Tiffany Charlene Janis appeals her conviction for discharging a firearm during a crime of violence. *See* **18 USC § 924(c)(1)(A)(iii)**. Having jurisdiction under 28 U.S.C. § 1291 and § 2253, this court affirms.

## I.

Janis shot and killed her husband when she found him cheating. She pled guilty to second-degree murder in Indian country. *See* **18 U.S.C. §§ 1111(a)**, **1153**. She also pled guilty to discharging a firearm during the commission of a crime of violence. *See* **18 U.S.C. § 924(c)(1)(A)(iii)**.

A year later, Janis moved to vacate her § 924(c) conviction, believing that intervening Supreme Court cases rendered it unlawful. *See* **28 U.S.C. § 2255**. Specifically, she argued that federal second-degree murder could not be considered a "crime of violence" under § 924(c)(3)(A). The district court[1] dismissed her motion. She appeals.

## II.

This court reviews de novo whether second-degree murder qualifies as a "crime of violence." *McCoy v. United States*, 960 F.3d 487, 489 (8th Cir. 2020).

## A.

Janis pled guilty to discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Like other laws,[2] § 924(c) defines "crime of violence" using a "force clause" (also called an "elements clause") and a "residual clause":

> [T]he term "crime of violence" means an offense that is a felony and—

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

[2]See, for example, the Armed Career Criminal Act, 18 U.S.C. § 924(e); the criminal code's general provisions at 18 U.S.C. § 16; and U.S. Sentencing Guidelines §§ 4B1.1, 4B1.2, and 2K2.1.

[Force Clause] (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

[Residual Clause] (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**18 U.S.C. § 924(c)(3)** (alterations added).

When Janis pled guilty under § 924(c), federal second-degree murder might have qualified as a "crime of violence" under either the force or the residual clause. The Supreme Court changed the landscape by invalidating the residual clause as unconstitutionally vague. *United States v. Davis*, 139 S.Ct. 2319, 2336 (2019). *See also **Jones v. United States***, 39 F.4th 523, 526 (8th Cir. 2022) ("*Davis* applies retroactively to cases on collateral review."). Today, Janis's murder conviction must satisfy the force clause to qualify as a crime of violence. *See **McCoy***, 960 F.39 at 489.

To decide whether second-degree murder qualifies as a crime of violence under the force clause, this court applies the categorical approach described in *United States v. Taylor*, 142 S.Ct. 2015, 2020 (2022). *Accord **McCoy***, 960 F.39 at 489. This approach compares the elements of second-degree murder with the force clause's requirements. ***Taylor***, 142 S.Ct. at 2020. "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force" against the person or property of another. ***Id.*** *See* **18 U.S.C. § 924(c)(3)(A)** (force must be used, attempted, or threatened "against the person or property of another").

Federal murder requires proof beyond a reasonable doubt that the defendant committed an "unlawful killing of a human being with malice aforethought." **18**

-3-

**U.S.C. § 1111(a)**. The statute lists the killings that qualify as first-degree murder.[3] "Any other murder is murder in the second degree." *Id.* Second-degree murder thus has two elements: (1) unlawful killing of a human being; with (2) malice aforethought. *See **United States v. Iron Crow***, 970 F.3d 1003, 1009 (8th Cir. 2020). The categorical approach asks whether those elements always satisfy § 924(c).

Recently, analyzing near-identical statutory language in the Armed Career Criminal Act, the Supreme Court showed how to interpret 924(c)'s force clause. *See **Borden v. United States***, 141 S.Ct. 1817, 1825–28 (2021) (plurality opinion); *see also **id.*** at 1834 (Thomas, J., concurring in the judgment). The plurality analyzed the clause's text, which defines violent felonies as those involving the "use of physical force against the person of another." **18 U.S.C. § 924(e)**. It held that the direct object—"use of force *against the person of another*"—introduces a "conscious object" that force is "consciously directed" against. ***Borden***, 141 S.Ct. at 1825, 26 (emphasis added), *distinguishing **Voisine v. United States***, 579 U.S. 686, 691–93 (2016) (holding that the phrase "use of force," standing alone, encompasses crimes committed with ordinary recklessness). A concurrence in the judgment concluded that the word "use" applies "only to intentional acts designed to cause harm." ***Borden***, 141 S.Ct. at 1835 (Thomas, J., concurring in the judgment).

---

[3]The statute says:

> Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

**18 U.S.C. § 1111(a)**.

The Court concluded that the force clause excluded crimes capable of being committed with a mens rea of ordinary recklessness. Someone recklessly committing a crime, the plurality said, merely "pay[s] insufficient attention to the potential application of force." *Id.* at 1827. "[B]ecause his conduct is not opposed to or directed at another . . . [he] has not used force 'against' another person in the targeted way that [the force] clause requires." *Id.*

*Borden* does not resolve Janis's case—second-degree murder cannot be committed with ordinary recklessness. *See United States v. Johnson*, 879 F.2d 331, 334 (8th Cir. 1989). *See also United States v. Larry*, 51 F.4th 290, 292 (8th Cir. 2022) ("*Borden* holds only that the force clause categorically excludes offenses that can be committed recklessly."). Second-degree murder requires malice aforethought, a heightened mens rea. *See Johnson*, 879 F.2d at 334; *Stevenson v. United States*, 162 U.S. 313, 320 (1896) ("Malice in connection with the crime of killing is but another name for a certain condition of a man's heart or mind."); *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160 (1820) ("In respect to murder, . . . 'malice aforethought' is of the essence of the offence . . . ."). Nonetheless, *Borden*'s analysis of the statutory phrase "against the person of another" is instructive. *See United States v. Frazier*, 48 F.4th 884, 886 (8th Cir. 2022) (applying *Borden*'s analytical approach).

## B.

Janis argues that killing a person "with malice aforethought" can be done without "us[ing] force against the person or property of another." **18 U.S.C. § 924(c)(3)(A)**. This court's second-degree murder cases, she says, show that "malice aforethought" can be established without a perpetrator "targeting" force in the way that the force clause, as interpreted by the *Borden* plurality, requires.

Under the approach of the *Borden* plurality, § 924(c)'s force clause requires directing or targeting force at another person or their property. *See Borden*, 141 S.Ct. at 1825 ("The phrase 'against another,' when modifying the 'use of force,'

-5-

demands that the perpetrator direct his action at, or target, another individual."). Federal second-degree murder will always clear this bar. Because it requires malice aforethought, the crime always involves "consciously directed" force and thus constitutes a "crime of violence" under §924(c)'s force clause.

The categorical approach compels this conclusion for malice aforethought. Malice aforethought expresses the "universal and persistent" concept "that a defendant must be 'blameworthy in mind' before he can be found guilty." *Elonis v. United States*, 575 U.S. 723, 734 (2015), *quoting* **Morissette v. United States**, 342 U.S. 246, 250, 252 (1952). But the concept is—and has long been— "elusive." **Morissette**, 342 U.S. at 252. *See also* **Francis Wharton**, *A Treatise on the Law of Homicide in the United States* ch. 1, § 3 (1875) (Malice aforethought is "distinctive[,] inconclusive," and requires "peculiar exposition and limitation"), *cited by* **Allen v. United States**, 164 U.S. 492, 495 (1896), *and* **Schad v. Arizona**, 501 U.S. 624, 648 (1991) (Scalia, concurring in part and concurring in the judgment).

Malice aforethought's definition may be elusive, but its function is not: "malice aforethought"—a murder-specific term appearing only once in the entire *United States Code* (18 U.S.C. § 1111, "Murder")—distinguishes between more and less culpable killings. Historically, it "focus[ed] on mental state in order to distinguish those who deserved death from those who . . . would be spared." *Tison v. Arizona*, 481 U.S. 137, 156 (1987). As governments began deciding that not all murders warranted execution, they retained "malice aforethought" to distinguish murder from manslaughter. *Mullaney v. Wilbur*, 421 U.S. 684, 693 (1975). This distinction has deep roots. *See* 4 W. Blackstone, **Commentaries on the Laws of England** 191, 198–201 (1769); **Stevenson**, 162 U.S. at 320 ("The presence or absence of this malice or mental condition marks the boundary which separates the two crimes of murder and manslaughter."). The federal murder statute continues the tradition of using "malice aforethought" to distinguish murder from manslaughter; the more-culpable homicide from the less-culpable one. *Compare* **18 U.S.C. §**

**1111(b)** (authorizing a life sentence for murder) *with* **18 U.S.C. § 1112** (setting a 15-year maximum for manslaughter, defined as an unlawful killing "without malice").

This court defines "malice aforethought" as the "intent, at the time of a killing, willfully to take the life *of a human being*, or an intent willfully to act in callous and wanton disregard of the consequences *to human life*." **United States v. Comly**, 998 F.3d 340, 343 (8th Cir. 2021) (emphasis added), *quoting* **Eighth Circuit Manual of Model Jury Instructions (Criminal)** § 6.18.1111A-1 (2018). *See **United States v. Cottier***, 908 F.3d 1141, 1147 (8th Cir. 2018) (recognizing that this definition "tracks circuit precedent verbatim"); **Johnson**, 879 F.2d at 334 (approving this definition).

Similar articulations go back hundreds of years. *See **United States v. Lung'aho***, --- F.4th ---, ---, No. 22-3268, 2023 WL 4359975, at *2 (8th Cir. July 6, 2023) (relying on hundreds of years of common law to define the term "malice" or "maliciously"). For example, Maine law—described as "like that of other jurisdictions," *Mullaney*, 421 U.S. at 697—permitted inferring malice aforethought only where a "deliberate, cruel act, [was] committed by one person *against another*" without provocation, *State v. Neal*, 37 Me. 468, 470 (1854) (emphasis added). The Model Penal Code's definition also contains a direct object—it limits murder to reckless conduct "manifesting extreme indifference *to the value of human life*." **Model Penal Code** § 210.2(1)(b) (emphasis added). Other circuits agree, too. *See, e.g.*, **United States v. Hicks**, 389 F.3d 514, 530 (5th Cir. 2004) (malice aforethought involves "extreme recklessness and wanton disregard *for human life*" (emphasis added)); **United States v. Baez-Martinez**, 950 F.3d 119, 127 (1st Cir. 2020) ("[W]hat separates malice aforethought is the extreme indifference to the value of human life." (quotation omitted)); **United States v. Pineda-Doval**, 614 F.3d 1019, 1037 (9th Cir. 2010) (malice aforethought involves "callous and wanton disregard *of human life*" and "extreme indifference to the value *of human life*." (emphasis added)).

The history and definition of "malice aforethought" demonstrate that federal second-degree murder satisfies § 924(c)'s force clause. The phrase "malice aforethought" necessarily denotes the oppositional conduct that the force clause

requires: "an intent willfully to act in callous and wanton disregard of the consequences to human life." ***Comly***, 998 F.3d at 343, *quoting* **Eighth Circuit Model Jury Instruction (Crim.)** § 6.18.1111A-1. This requires "more risk and culpability" than the standard of "willful disregard of the likelihood" of harm. ***Lung'aho***, --- F.4th at ---, at *3 (holding that arson, in 18 U.S.C. § 844(f)(1), is not a "crime of violence" because its mental state, "maliciously," requires only a "willful disregard of the likelihood" of damage to federally connected property). Second-degree murder is thus a crime of violence.

C.

Janis suggests a narrower focus, based on the premise that "malice aforethought" can be established by a "depraved heart" or "extreme recklessness." Such conduct, she argues, does not include the "targeted" or "directed" force that the *Borden* plurality says is required for a crime of violence. Thus, she says, second-degree murder cannot constitute a crime of violence.

Even if this court adopted Janis's preferred approach,[4] it would reach the same result. Janis begins with the modern four-part categorization of mental states that

---

[4]This court must focus on the least culpable conduct criminalized by the murder statute. ***Frazier***, 48 F.4th at 885. But extreme recklessness might not be the right focus. Murder always requires malice aforethought—extreme recklessness is not an alternative means of murdering, nor is it an alternative culpable mental state. *See* ***Elonis v. United States***, 575 U.S. 723, 734 (2015) (malice aforethought describes a culpable mental state); ***Stevenson***, 162 U.S. at 320. Extreme-recklessness murders might not be conceptually distinct acts warranting individualized analysis.

Even if they were, extreme-recklessness murders (where a killer has malice aforethought) are not necessarily less culpable than intentional ones (where a killer also has malice aforethought). The big division in culpability is not *within* malice-aforethought homicides, but *between* homicides committed with malice aforethought and those without. *See* ***Tison***, 481 U.S. at 156; ***Mullaney***, 421 U.S. at 693. In short, it is unclear whether subdividing malice aforethought and analyzing

-8-

are, "in descending order of culpability: purpose, knowledge, recklessness, and negligence." **Borden**, 141 S.Ct. at 1823. Crimes committed purposely or knowingly satisfy § 924(c)'s force clause; crimes capable of being committed recklessly or negligently do not. **Id.** at 1826. But the Court reserved judgment on crimes involving mental states—like extreme recklessness—between knowledge and recklessness. **Id.** at 1825 n.4 ("Some States recognize mental states (often called 'depraved heart' or 'extreme recklessness') between recklessness and knowledge. We have no occasion to address whether offenses with those mental states fall within the elements clause.").

Janis says that second-degree murder can be committed with extreme recklessness, relying heavily on this court's quotation of the D.C. Circuit's statement of malice aforethought: "Malice may be established by evidence of conduct which is 'reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'" **United States v. Black Elk**, 579 F.2d 49, 51 (8th Cir. 1978) (per curiam), *quoting* **United States v. Cox**, 509 F.2d 390, 392 (D.C. Cir. 1974). That articulation is often repeated. *See, e.g.*, **Cottier**, 908 F.3d at 1146; **United States v. French**, 719 F.3d 1002, 1008 (8th Cir. 2013).

The authorities underlying *Black Elk* show that malice aforethought requires a "wanton disregard of human life, and a "defendant's "awareness of a serious danger to life." *See* **United States v. Dixon**, 419 F.2d 288, 293 n.8 (D.C. Cir. 1969) (Leventhal, J., concurring), *cited in* **Cox**, 509 F.2d at 392 n.1. For that reason, *Black Elk* is consistent with this court's precedent that highlights the high degree of risk to

---

it piecemeal is appropriate, or whether that represents improper "obsess[ion] with hair-splitting distinctions, either traditional or novel, that Congress neither stated nor implied when it made the conduct criminal." **United States v. Bailey**, 444 U.S. 394, 407 (1980). *See also* **id.** at 406 ("[E]lement-by-element analysis is a useful tool for making sense of an otherwise opaque concept, [but] it is not the only principle to be considered.").

human life. *See, e.g.*, **Comly**, 998 F.3d at 343 (Malice aforethought is the "intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life."). *See generally **Johnson***, 879 F.2d at 334 (approving the "callous and wanton" definition and also citing the *Black Elk* quotation).

*Black Elk*'s context shows that the standard it articulates is close to knowledge and far from ordinary recklessness. *Black Elk* contrasts its standard with "the subjective intent to kill," another term for purposefulness. **Black Elk**, 579 F.2d at 51. If malice aforethought is defined by highlighting its small differences from purpose, it seems natural to locate it near the next most culpable mental state, knowledge.

Extreme recklessness also approaches the definition of knowledge. An individual acts knowingly "if he is aware that [a] result is practically certain to follow from his conduct." **United States v. Bailey**, 444 U.S. 394, 404 (1980) (quotations omitted). Because the risk from extreme-reckless conduct is so high, the harmful result nears "practical certainty" that force will be applied to another person. *See* **Baez-Martinez**, 950 F.3d at 127 ("[T]he defendant who shoots a gun into a crowded room has acted with malice aforethought precisely because there is a much higher probability—a practical certainty—that injury to another will result. And the defendant certainly must be aware that there are potential victims before he can act with indifference toward them.").

These considerations have led every other circuit considering the issue after *Borden* to conclude that "malice aforethought" conduct satisfies § 924(c)'s force clause. *See* **Begay**, 33 F.4th at 1093; **United States v. Manley**, 52 F.4th 143, 150 (4th Cir. 2022); **Alvarado-Linares v. United States**, 44 F.4th 1334, 1344 (11th Cir. 2022); **United States v. Harrison**, 54 F.4th 884, 890 (6th Cir. 2022). This court agrees.

-10-

Faced with strong arguments and the emerging circuit consensus, Janis turns to this court's decision in *United States v. Boose*, 739 F.3d 1185 (8th Cir. 2014). That case held that Arkansas first-degree battery could be committed with a mental state of ordinary recklessness, despite an additional statutory requirement that a defendant manifest "extreme indifference to the value of human life." ***Id.*** at 1188. Because *Boose* analyzed a different mens rea than that applicable to federal second-degree murder, it does not require a result incongruous with the circuit consensus.

Finally, Janis spotlights reckless-driving crimes to argue that extreme-recklessness murders need not involve directed force. She identifies five out-of-circuit cases that she says establish the possibility of committing second-degree murder by recklessly driving. *See **United States v. Fleming***, 739 F.2d 945, 947–48 (4th Cir. 1984); ***United States v. Sheffey***, 57 F.3d 1419, 1431 (6th Cir. 1995); ***United States v. Chippewa***, 141 F.3d 118 (table), No. 97-30160, 1998 WL 123150, at *1 (9th Cir. Mar. 17, 1998) (unpublished); ***United States v. Merritt***, 961 F.3d 1105, 1118 (10th Cir. 2020); ***United States v. Lemus-Gonzalez***, 563 F.3d 88, 93 (5th Cir. 2009). This possibility, she argues, shows that second-degree murder can be committed without targeting force in the way *Borden* requires.

Neither Janis nor this court has found an Eighth Circuit case concluding that reckless driving can be murder. But assuming it could, reckless-driving-murder convictions require malice aforethought which, as discussed, is a sufficient mens rea to satisfy § 924(c)'s force clause. The term *reckless* driving applied to *murder* convictions is a misnomer—drivers who commit murder do not exhibit ordinary recklessness, but rather willfully act in callous and wanton disregard of the consequences to human life. *See **Black Elk***, 579 F.2d at 51; ***Comly***, 998 F.3d at 343; ***Baez-Martinez***, 950 F.3d at 127.

Janis's five out-of-circuit cases themselves involved egregiously dangerous conduct with such a high probability of harm and such a callous and wanton disregard of human life that a jury could infer the existence of malice aforethought. *See **Lung'aho***, 2023 WL 4359975, at *3 (using the degree of "risk and culpability"

-11-

in a "sliding scale of probabilities" to apply the categorical approach); *Stevenson*, 162 U.S. at 320 ("[T]he only way to decide upon [malice aforethought] at the time of a killing is to infer it from the surrounding facts, and that inference is one of fact, for a jury."). The Fourth Circuit upheld a jury's verdict because the "degree" of danger was high enough that the jury could conclude "that defendant intended to operate his car in the manner in which he did with a heart that was without regard for the life and safety of others." *Fleming*, 739 F.3d at 948. The Fifth Circuit affirmed a district court's second-degree-murder sentencing enhancement because the "circumstances [were] beyond the recklessness involved in the ordinary intoxicated-driving offense." *Lemus-Gonzalez*, 563 F.3d at 93. The Tenth Circuit emphasized the defendant's special knowledge of just how risky his conduct was. *Merritt*, 961 F.3d at 1112. And both the Sixth and Ninth Circuits emphasized the heightened risk and heightened disdain for human life necessary to permit an inference of malice aforethought. *See Sheffey*, 57 F.3d at 1430; *Chippewa*, 1998 WL 123150, at \*1.

That a jury can find malice aforethought based on a defendant's acts behind the wheel does not undermine the conclusion that malice aforethought satisfies the force clause. *Cf. Borden*, 141 S.Ct. at 1827 (contrasting a knowingly homicidal driver who "would prefer a clear road," but "sees a pedestrian in his path [and] plows ahead anyway" with a reckless one who "decides to run a red light, and hits a pedestrian whom he did not see."); *Lung'aho*, 2023 WL 4359975, at \*2 ("running over a pedestrian the driver knows is right in front of him would still count [as a crime of violence], but one for recklessly hitting a pedestrian while texting would not"). It would overstate the holding of *Borden* to require that every use of force against the person of another must purposefully target the specific person who is victimized. *Cf. Restatement (Second) of Torts* § 8A, comment b, illus. 1 ("A throws a bomb into B's office for the purpose of killing B. A knows that C, B's stenographer, is in the office. A has no desire to injure C, but knows that his act is substantially certain to do so. C is injured by the explosion. A is subject to liability to C for an intentional tort."); *Voisine*, 579 U.S. at 705 (Thomas, J., dissenting) (citing the Restatement). Therefore, this court rejects Janis's argument.

III.

Janis argues that, due to the possibility of second-degree murder against an unborn child, the crime cannot be considered a "crime of violence." She argues that a person can commit federal second-degree murder by applying force to an unborn child—but because a fetus is not "the person or property of another" as that phrase is used by § 924(c)—it is possible to commit federal second-degree murder in a way that does not "use force against the person or property of another." **18 U.S.C. § 924(c)**. *See generally* **1 U.S.C. § 8(a)** (a "person" or "human being" is an individual who is "born alive"); **18 U.S.C. § 1111(a)** (Murder is the unlawful killing of a human being . . . .").

Janis relies on *United States v. Flute*, 929 F.3d 584 (8th Cir. 2019), which held that an indictment sufficiently alleged involuntary manslaughter when a baby died shortly after birth because the pregnant mother "ingest[ed] prescribed and over-the-counter medicines in a grossly negligent manner." *Flute*, 929 F.3d at 586. This conduct, this court held, constituted unlawful killing of another human being who was born alive. *Id.* Relying on *Flute*, Janis maintains that a mother could commit second-degree murder by using force only against an unborn child (who is later born alive but dies from prenatal injuries), so the crime does not require the use of force against "the person . . . of another."

Assuming for the sake of analysis that the use of force against an unborn child who dies after birth is not the use of force against "the person" of another, *see United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011), Janis's reliance on *Flute* does not carry the day. The divided panel decision in *Flute* is the only reported case holding that a mother could be convicted of involuntary manslaughter for prenatal conduct. This court in *McCoy* did not extend the rationale of *Flute* to *voluntary* manslaughter. 960 F.3d at 490. Janis suggests no authority under the common law or the federal statute that would extend *Flute* even further to convict a mother of second-degree murder (or first-degree murder) based on her prenatal conduct. Therefore, this court rejects Janis's argument.

IV.

Homicides committed with malice aforethought involve the "use of force against the person or property of another," so second-degree murder is crime of violence. This holding implements the Supreme Court's command to interpret statutes using not only "the statutory context, structure, history, and purpose," but also "common sense." *Abramski v. United States*, 573 U.S. 169, 179 (2014). In the Court's force-clause cases, it counsels common-sense reasoning. In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Court said that it "cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" *Id.* at 11. The Court was more explicit in *Johnson v. United States*, 559 U.S. 133 (2010), where it reminded courts that "[u]ltimately, context determines meaning" when interpreting a phrase "used in defining" the term "*violent* felony." *Id.* at 139–40. The *Borden* plurality followed suit, noting that the "ordinary meaning" of "violent felony" "informs [its statutory] construction." *Borden*, 141 S.Ct. at 1817.

Murder is the ultimate violent crime—irreversible and incomparable "in terms of moral depravity." *Kennedy v. Louisiana*, 554 U.S. 407, 438 (2008). The *Borden* plurality agreed, quoting an opinion by then-Judge Alito that "[t]he quintessential violent crimes,' like murder or rape, 'involve the intentional use' of force." *Borden*, 141 S.Ct. at 1830, *quoting Oyebanji v. Gonzales*, 418 F.3d 260, 264 (3d Cir. 2005). Malice aforethought, murder's defining characteristic, encapsulates the crime's violent nature.

Janis unlawfully killed her husband with malice aforethought. That was murder—a crime of violence. Janis's § 924(c) conviction need not be vacated.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____