# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2689
_____

United States of America

*Plaintiff - Appellee*

v.

Colton Bagola

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota

_____

Submitted: June 13, 2024
Filed: July 19, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Colton Bagola shot Sloane Bull Bear point-blank in the back of the head. A jury later convicted him of first-degree murder and discharge of a firearm during a

crime of violence. The district court[1] sentenced Bagola to life imprisonment. On appeal, Bagola raises various challenges to his conviction. We affirm.

## I.

On December 16, 2019, several people, including Bagola, gathered at the home of William Reddy in Pine Ridge, South Dakota. Also present were Casandra Goings, Ben Freeman, Jesse Buckman, Thelma Pond, and Sloane Bull Bear.

At some point during the evening, Buckman went to the bathroom to inject drugs. After he returned to the living room, Buckman saw Bagola holding a gun behind his back. Seeing this, Buckman decided to leave. But before he could get to the door, Reddy, Goings, and Bull Bear also decided to leave to buy cigarettes and shoot guns. As Goings was leaving the house, Bull Bear was behind her, and Bagola was behind Bull Bear. Reddy and Buckman testified that Bagola then moved directly behind Bull Bear and shot him in the back of the head, from approximately one inch away.

Bagola, Freeman, and Buckman ran from the house. Reddy searched Bull Bear's body for car keys and fled in Bull Bear's vehicle with Pond and Goings. Hours later, at approximately 3:30 a.m., Goings called 911. Bull Bear ultimately succumbed to his injuries, and law enforcement found his body in the exterior doorway.

Bagola was indicted for first-degree murder in violation of 18 U.S.C. §§ 1111(a) and 1153, the discharge of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and for tampering with evidence in violation of 18 U.S.C. § 1512(c)(1). A grand jury returned a Second Superseding Indictment against Bagola, adding a count of conspiracy to distribute a

---

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846. After the district court severed the conspiracy count, a jury trial was held in October 2022. The district court granted Bagola's motion for judgment of acquittal on the tampering count, but the jury convicted Bagola of first-degree murder and discharge of a firearm during the commission of a crime of violence.

After the verdict, Bagola filed a motion for judgment of acquittal, which the district court denied. And on July 6, 2023, the district court sentenced Bagola to life imprisonment. Bagola subsequently filed this appeal.

## II.

On appeal, Bagola argues: (1) the district court admitted unreliable expert testimony, (2) the jury instructions did not adequately explain the "Indian" status element, (3) there was insufficient evidence to support the guilty verdict on premeditated first-degree murder, and (4) premeditated first-degree murder is not a crime of violence. We disagree and affirm the district court.

## A.

Bagola claims the district court improperly admitted certain expert testimony. "The admission or exclusion of expert testimony is reviewed for abuse of discretion." *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016). When considering expert testimony, a district court must ensure that "all scientific testimony is both *reliable* and *relevant*." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (emphasis added). To satisfy the reliability requirement, the party offering expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Id.* at 757–58. To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id.* at 758.

Bagola argues Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Brent Fair's methodology was unreliable. Specifically, Agent Fair testified that a firearm depicted in a photograph from Bagola's Facebook page could fire the bullet that was found in Bull Bear's head. Bagola claims Agent Fair had no scientific or technical information about this specific firearm, however, because neither Agent Fair nor the ATF Library had access to an exemplar of the weapon. Since the ATF did not have a copy of the firearm, Bagola claims Fair could not adequately render an expert opinion. Whether or not Bagola's contentions hold water, we need not resolve. Any alleged error was harmless.

Under Federal Rule of Criminal Procedure 52(a), "[a]n evidentiary error is harmless when . . . [a court] determine[s] that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *United States v. Farish*, 535 F.3d 815, 820 (8th Cir. 2008) (quotation omitted). Even without Agent Fair's testimony, ample evidence connected Bagola to the shooting. First, there was evidence linking the Facebook firearm with Bull Bear's death. Reddy described the firearm used to murder Bull Bear as a "silver revolver with a black handle . . . [that had] black tape on the handle." This description matches the gun depicted in Bagola's Facebook post. Second, several eyewitnesses testified Bagola was the shooter. Reddy, for example, testified he saw Bagola's "arm in the air . . . with the pistol . . . above [Bull Bear's] head." And Buckman testified he saw Bagola shoot Bull Bear from approximately one inch away. Moreover, the defense was able to cross examine Agent Fair extensively about the limits of his firearm identification, including that he had not observed a model like that depicted in the Facebook photo. Agent Fair's testimony was a small part of the evidence that helped to identify Bagola as the shooter, but it was far from the only evidence, and certainly not the most crucial.

**B.**

Bagola also takes issue with the district court's handling of the "Indian" status element of his first-degree murder charge. Because Bagola did not object to this

below, plain error review applies. *United States v. Refert*, 519 F.3d 752, 756 (8th Cir. 2008). To establish plain error, Bagola must show "(1) the district court committed an error; (2) the error is plain; and (3) the error affects his substantial rights." *United States v. Smith*, 4 F.4th 679, 686 (8th Cir. 2021). "Assuming the first three prongs are met, '[courts] will exercise . . . discretion to correct such an error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020)). Bagola "bears the burden of establishing all four prongs of plain-error review." *Id.*

To convict Bagola of first-degree murder, the government had to prove: (1) Bagola unlawfully killed Bull Bear; (2) he acted with malice aforethought; (3) the killing was premeditated; and (4) the killing occurred in Indian country and Bagola is an Indian. *See* 18 U.S.C. §§ 1111 and 1153. The generally accepted test for determining one's "Indian" status requires the government prove "the defendant (1) has some Indian blood, and (2) is recognized as an Indian by a tribe or the federal government or both." *United States v. Stymiest*, 581 F.3d 759, 762 (8th Cir. 2009).

Because Bagola's "Indian" status remained an element to be determined by the jury, the district court was required to instruct the jury on how to establish whether Bagola is an Indian person. *See Stymiest*, 581 F.3d at 763–64. The district court, however, failed to include language explaining how this determination should be made or what factors should be considered. Although "there is no single correct way to instruct a jury on this issue," this was error. *Id.* at 764; Model Crim. Jury Instr. 8th Cir. 6.18.1153 (2021). But the error did not affect Bagola's substantial rights. "[A]n instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9 (1999). An "error [does] not warrant correction in light of . . . 'overwhelming' and 'uncontroverted' evidence supporting [the omitted element]." *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)).

Here, there was uncontroverted evidence supporting the omitted "Indian" status element. For example, the government offered testimony from the director of enrollment for the Oglala Sioux Tribe. The director testified there are two prerequisites for tribal membership. First, a person must have at least one parent who is already enrolled in the tribe. Second, the candidate must submit various documents proving such is true—a family tree, a notarized application, and a state-certified birth certificate. Only after these requirements are met does the tribe acknowledge membership by issuing a Certificate Degree of Indian Blood. During the director's testimony, the government presented a certificate of tribal enrollment showing Bagola was an enrolled member of the Oglala Sioux Tribe (the director of enrollment affirmed the certificate's accuracy). Thus, by presenting this certificate, the government met both elements outlined in *Stymiest*—Bagola would not have a certificate unless he had "some Indian blood" and was "recognized as an Indian by the [Oglala Sioux Tribe]." *See Stymiest*, 581 F.3d at 762. Thus, there was ample evidence supporting the omitted "Indian" status element and we will not reverse under the plain error standard.

## C.

Bagola also maintains there was insufficient evidence to support his premeditated first-degree murder conviction. "We review the sufficiency of the evidence supporting a conviction de novo, 'viewing the evidence most favorably to the verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences.'" *United States v. Hensley*, 982 F.3d 1147, 1154 (8th Cir. 2020) (quoting *United States v. Riepe*, 858 F.3d 552, 558–59 (8th Cir. 2017)). "The verdict must be upheld 'if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *Id.* (some internal quotation marks omitted) (quoting *Riepe*, 858 F.3d at 559).

Bagola argues there was insufficient evidence to support premeditation. "An offender acts with premeditation when his conduct is the result of planning or deliberation." *United States v. Nichols*, 76 F.4th 1046, 1059 (8th Cir. 2023). And "proof of premeditation [does] not require the government to show that the defendant

deliberated for any particular length of time." *United States v. Slader*, 791 F.2d 655, 657 (8th Cir. 1986). "[S]wift but deliberate actions before shooting [can] demonstrate that [a defendant] acted with the requisite premeditation." *United States v. Greer*, 57 F.4th 626, 629 (8th Cir. 2023) (citation omitted).

The facts of this case sufficiently show premeditation. Bagola brought a loaded firearm into Reddy's house and attempted to conceal it. Immediately before the shooting, Buckman saw Bagola with a gun in his hand, hidden behind his back. Then, when Bull Bear got up to leave, Bagola was "[r]ight behind him[,]" and Reddy saw "Colton's arm in the air" with the pistol behind "[Bull Bear's] head." These are "swift but deliberate actions" that show premeditation.

Moreover, earlier in the day, Bagola made several statements indicating his desire to kill somebody. He went to Reddy's home on the morning of the shooting. While there, he took out a silver pistol, put it on the table with the barrel pointed toward Reddy and said he needed to take Reddy's soul.[2] If that was not a possibility, "he needed to kill . . . either Ben or Skud or someone else." That same evening, Bagola went to his cousin Devon Janis's trailer and told Janis there were "[b]ig things coming" and he was "doing this for the family."[3] These facts show premeditation. Thus, the evidence was sufficient for a reasonable jury to convict Bagola.

---

[2]Although the parties disagree on the meaning of Bagola's comment, we view the evidence in the light most favorable to the verdict and give it the benefit of all reasonable inferences. *United States v. Hensley*, 982 F.3d 1147, 1154 (8th Cir. 2020). Combining the fact that Bagola pointed a gun at Reddy with the testimony that Bagola wanted to kill various people convinces us there was sufficient evidence for a jury to conclude Bagola was threatening to kill someone.

[3]Even though these words could be given more than one interpretation, we must view the evidence in the light most favorable to the verdict. *Hensley*, 982 F.3d at 1154.

## D.

Lastly, Bagola argues first-degree murder is not a "crime of violence" under 18 U.S.C. § 924(c). We review de novo whether first-degree murder qualifies as a "crime of violence." *See Janis v. United States*, 73 F.4th 628, 629 (8th Cir. 2023).

Under 18 U.S.C. § 924(c)(3)(A), the government had to prove the underlying alleged crime of premeditated first-degree murder was a "crime of violence." To make this determination, courts usually apply the categorical approach, which compares the elements of first-degree murder with the "crime of violence" definition. *United States v. Taylor*, 596 U.S. 845, 850 (2022). Section 924(c)(3)(A) defines "crime of violence" as "a felony" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." The only relevant inquiry "is whether [first-degree murder] always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 850.

This case is controlled by our decision in *Janis*. There, we ruled that "[h]omicides committed with malice aforethought involve the 'use of force against the person or property of another[.]'" *Janis*, 73 F.4th at 636 (quoting 18 U.S.C. § 924(c)(3)(A)). *Janis* concluded, "[m]alice aforethought, murder's defining characteristic, encapsulates the crime's violent nature" and renders second-degree murder a crime of violence. *Id.* That conclusion controls here. First-degree murder, like its second-degree counterpart, also requires malice aforethought and "always involves 'consciously directed' force and thus constitutes a 'crime of violence' under § 924(c)'s force clause." *Id*. at 631 (quoting *Borden v. United States*, 593 U.S. 420, 431 (2021) (plurality opinion)). Federal premeditated first-degree murder is categorically a "crime of violence."

## III.

We affirm Bagola's convictions.

_____